**Enoch STEWART and Darrel Ann Stewart, Plaintiffs-Appellants,**

**v.**

**ABRAHAM LINCOLN MERCURY, INC., Defendant-Appellee.**

No. 81–3661.

United States Court of Appeals, Fifth Circuit.

Feb. 28, 1983.

Matthews & Breeden, Patrick D. Breeden, New Orleans, La., for plaintiffs-appellants.

John D. Cassanova, Metairie, La., Kenneth J. Servay, New Orleans, La., for defendant-appellee.

Before GARZA, REAVLEY and GARWOOD, Circuit Judges.

GARZA, Circuit Judge:

On December 14, 1979, Enoch and Darrel Ann Stewart purchased a used 1979 Mercury Cougar from defendant Abraham Lincoln Mercury, Inc. The installment contract they signed to secure the credit to make this purchase is the subject of this dispute. Plaintiffs allege that defendant dealer violated both the Federal Consumer Credit Protection Act,[1] 15 U.S.C. § 1601 et seq., and Regulation Z of the Federal Reserve Board, 12 CFR § 226.1 et seq., by failing to give certain necessary disclosures and giving other incorrect disclosures. The trial court ruled against plaintiffs on all points. This appeal followed.

The first point of plaintiffs' appeal charges that the Truth-in-Lending Act [hereinafter TILA] and Regulation Z are violated by inaccurate disclosure of the amounts that could be charged for late and delinquent payments. Louisiana law provides for the following charges:

> The holder of any retail installment contract shall not collect or receive any charges of expenses for delinquency except as follows: The holder of a retail installment contract, if the contract so provides, may collect a delinquency charge for default in the payment of any such contract or installment thereof where such default shall have continued for a period of ten days or longer. Such charge shall not exceed the greater of either:

---

1. This Act is commonly known as the Truth-in- Lending Act.

(a) Five percent of the amount of the installment in default not to exceed five dollars, or

(b) An amount equal to one and one-half percent of the delinquent installment, per month, computed on the unpaid amount of the installment for the period that it is delinquent. Such charge shall be computed only on the number of days that it is delinquent. In addition to such delinquency charge the retail installment contract may provide for the payment of actual out of pocket expense of collection not to exceed $150.00 and for attorney fees a $15.00 minimum not exceeding 25% of the total amount due and payable under such contract where such contract is referred to an attorney for collection; provided, however, that the provision contained herein shall not be construed to preclude an option by the holder of any note given to secure a retail installment contract to accelerate the total balance due when said note provides that the failure to pay any installment when due shall mature the note in its entirety.

La.Rev.Stat.Ann. § 6:956(G) (West Supp. 1982).

The basis for plaintiffs' challenge is a statutory interpretation which views (a) and the entire paragraph (b) as alternative remedies. It is clear that the legislature designed the statute to permit a creditor to recover either five percent of the amount of the installment in default up to a five dollar ceiling or one and one-half percent of the delinquent amount for the entire term it is delinquent. Plaintiffs, however, contend that it is also clear that the remainder of paragraph (b) is an alternative to (a). Under plaintiffs' interpretation, a creditor can recover either a maximum of five dollars under (a) or he can recover one and one-half percent of the delinquent installment for the entire term of the delinquency plus $150 maximum collection fee, plus attorney's fees. Since the disclosure statement in the installment contract set forth a different interpretation of the statute,[2] a TILA violation must be found.

The court below rejected this reading of the statute, and we must concur in that decision. Not only does a simple reading of the statute convince the Court that the statute cannot be logically given this construction, but an examination of the statute which preceded the current statute also confirms the speciousness of plaintiffs' challenge. That version provided for only one manner of imposing a delinquency charge—that which is now (a). However, the statute also granted the collection and attorneys' fees that are listed in the present statute:

The holder of any retail installment contract shall not collect or receive any charges of expenses for delinquency except as follows: The holder of a retail installment contract, if the contract so provides, may collect a delinquency charge for default in the payment of any such contract or installment thereof where such default shall have continued for a period of ten days. Such charge shall not exceed 5% of the amount of the installment in default or the sum of $5, whichever is less. *In addition to such delinquency charge the retail installment contract may provide for the payment of actual out of pocket expense of collection not to exceed $150.00 and for attorney fees a $15.00 minimum not exceeding 25% of the total amount due and payable under such contract where such contract is*

2. The relevant installment contract provision provides:

(12) *Delinquency Charges:* Buyer hereby agrees to pay a delinquency charge on each installment in default for more than 10 days in the amount of 5% of the portion of the installment in default or $5.00, whichever is less, plus Seller's actual expenses of collection not to exceed $150.00 and if this contract is referred to an attorney for collection, attorney's fees of 25% of the total amount due and payable hereunder, with a minimum fee of $15.00.

Record on Appeal, vol. 1, at 62.

*referred to an attorney for collection;* provided, however that the provision contained herein shall not be construed to preclude an option by the holder of any note given to secure a retail installment contract to accelerate the total balance due when said note provides that the failure to pay an installment when due shall mature the note in its entirety.

1958 La.Acts No. 74 § 6(f) (emphasis added).

■ The inclusion of collection and attorneys' fees in the 1958 statute serves to support what the plain meaning of the statute demonstrates: attorneys' and collection fees were meant to supplement delinquency charges calculated in either manner permitted by statute.

As a second point of error, plaintiffs maintain that the Regulation Z[3] requirement that all numerical amounts be stated in figures is violated by the following disclosure in the installment contract:

(9) Payment Schedule: Buyer hereby agrees to pay to Seller, or to the Bearer of the Promissory Note executed in connection herewith, the Total of Payments (Item 8 above) in 42 monthly installments of *$219.44* each and one final installment of *$N/A* on the like day of each month commencing *Jan. 28, 1980,* or, if no date is specified, one month after the date of this contract.

Record on Appeal, vol. 1, at 63.

Plaintiffs assert that the word "one" in the phrases "one final installment" and "one month after the date of this contract" should have been stated by a figure. Defendant responds that the word "one" in the two phrases is mere surplusage. The phrase "one final installment" is not relevant here because all payments are identical. Similarly, the phrase "one month after the date of this contract" is not applicable because a specific payment date is set out.

■ This case is analogous to *Grant v. Imperial Motors,* 539 F.2d 506 (5th Cir. 1976), where plaintiff contended that the failure to state the amount of the "acquisition charge" in the following disclosure constituted a per se violation of Regulation Z.

In event of prepayment, refund of FINANCE CHARGE will be based on the sum of the digits method after first deducting an acquisition charge of $_____ from the FINANCE CHARGE.

539 F.2d at 509. The Court rejected this argument because there was no acquisition charge; hence, the whole phrase was surplusage. We reject plaintiffs' challenge on the same basis.

The third challenge to the district court's judgment concerns the disclosures relating to life, accident and health insurance. Regulation Z mandates that charges for credit life insurance be included in the finance charge unless the following section is complied with:

(5) Charges or premiums for credit life, accident, health, or loss of income insurance, written in connection with any credit transaction unless

(i) The insurance coverage is not required by the creditor and this fact is clearly and conspicuously disclosed in writing to the customer; and

(ii) Any customer desiring such insurance coverage gives specific dated and separately signed affirmative written indication of such desire after receiving written disclosure to him of the cost of such insurance.

12 CFR § 226.4(a)(5) (footnote omitted).

■ The charge for credit life insurance was not included in the finance charge in the instant case. Plaintiffs charge that this violates Regulation Z because both custom-

---

**3.** Regulation Z provides, in relevant part:

*Disclosures; general rule.* The disclosures required to be given by this part shall be made clearly, conspicuously, in meaningful sequence, in accordance with the further requirements of this section, and at the time and in the terminology prescribed in applicable sections. Except with respect to the re-

quirements of § 226.10, where the terms "finance charge" and "annual percentage rate" are required to be used, they shall be printed more conspicuously than other terminology required by this part and all numerical amounts and percentages shall be stated in figures.

ers did not give written indication of their desire for insurance. Only Enoch Stewart signed the section in the installment contract which set out the fact that insurance coverage is not required and that the buyer's signature will authorize the seller to obtain such coverage.[4] Both parties testified at trial that they wanted the credit life insurance, and, indeed, the installment contract indicates that they both received such coverage. Record on Appeal, vol. 1, at 65. Despite the fact that they did receive coverage in this case, the clear wording of Regulation Z requires a finding that the failure to obtain the signature of Darrel Ann Stewart violates the regulation.

Defendant argues that a Fifth Circuit case, *Jones v. Fitch,* 665 F.2d 586, 590–92 (5th Cir.1982), governs resolution of this case. However, the facts of that case indicate that only one of the co-borrowers wanted insurance. The Court properly ruled that it was proper to require one signature in that case. Defendant supplies this Court with no cases which deal with the case of both co-borrowers wanting insurance.

Fourth in the list of challenges to the district court judgment is the allegation that defendant improperly disclosed finance charge rebates. Three clauses in the installment contract form the basis for plaintiffs' argument. Clause 14, concerning prepayment rebate, provides in pertinent part that where the purchaser prepays his obligation, he shall receive a rebate of the unearned portion of the finance charge computed by the "sum of the digits" method. Clause 15, concerning confession of judgment, provides that the buyer confesses judgment in favor of the seller of subsequent holder of the note "for the full amount therefor." Clause 20, concerning

default, provides that upon default or the occurrence of certain other specified conditions, "seller shall have the right, at its election, to declare the unpaid portion of the Total of Payments ... to be immediately due and payable."[5]

Plaintiffs assert that while clause 14 discloses that prepayment entitles the customer to a rebate of the unearned portion of the finance charge in accordance with the "sum of digits" method, clauses 15 and 20 provide that upon default and acceleration, the creditor has the right to collect the entire amount of the note. Plaintiffs argue that the alleged inconsistency violates three portions of Regulation Z: (1) Section 226.-6(a), which requires that creditors give the required disclosures clearly; (2) Section 226.8(b)(4), which requires disclosure of the amount or method of computing the amount of any default or delinquency charge; and (3) Section 226.8(b)(7), which requires identification of the method of computing rebate of unearned finance charges, or if the creditor does not refund unearned finance charges upon prepayment, a statement to that effect.

Plaintiffs' argument is based on the Supreme Court opinion in *Ford Motor Credit Co. v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), which did not deal with this issue, but did mention the problem in a footnote:

> Respondents argue before this Court that even under the Federal Reserve Staff's view, petitioners violated TILA and Regulation Z because the credit contract itself contained language concerning acceleration rebates that assertedly contradicted the disclosures on the face of the contract. That contradiction, if present could run afoul of 12 CFR

4. The specific disclosure reads as follows:
NOTICE TO BUYER: (1) You are not required to obtain the Credit Life and/or Credit Accident and Health Insurance for which a charge is indicated above and such is not a factor in the Seller's approval of this credit. (2) You have the right to choose the person through whom the Automobile Physical Damage Insurance required under this contract is to be obtained. ACKNOWLEDGING

the foregoing, BUYER requests and authorizes SELLER to obtain each insurance coverage for which an amount is included above.

BUYER   /s/ Enoch Stewart   Date  12–14–79
(Cost of Insurance to be included only if signed and dated by Buyer)

Record on Appeal, vol. 1, at 62.

5. Record on Appeal, vol. 1, at 62, 64.

§§ 226.8(b)(7) or 226.6(c), as those provisions are understood by the agency staff. See Federal Reserve Staff Public Information Letter No. 1324, supra. But respondents prevailed in the District Court and in the Court of Appeals upon broader rulings that acceleration clause disclosure was generally required; neither court addressed the specific allegation of contradiction. Therefore, if properly presented, the contradiction issue is open for decision on remand.

444 U.S. at 570, n. 14, 100 S.Ct. at 799, n. 14. Plaintiffs claim that defendant has included not only contract terms that are contradictory but also has made disclosures on the face of the disclosure statement that are contradictory and misleading concerning practices upon acceleration and confession of judgment.

Defendant responds that plaintiffs' argument was rejected by this Court in *Gallois v. Commercial Securities Co.,* 661 F.2d 901 (5th Cir.1981), a case tried by the same attorney who represents these plaintiffs. That panel held:

> The first issue is whether Commercial violated TIL by failing to disclose certain information about the consequences of an acceleration charge. This claim is without merit in light of *Ford Motor Credit Company v. Milhollin,* 444 U.S. 555, 100 S.Ct. 790, 63 L.Ed.2d 22 (1980), where the Supreme Court held that "acceleration rebate practices need be disclosed only when they diverge from other prepayment rebate practices." *Id.* at 569, 100 S.Ct. at 798, 63 L.Ed.2d at 33. We find no variance between Commercial's acceleration rebate policy and its custom with respect to voluntary prepayment rebates, especially since Louisiana law requires that these two policies be the same. La. R.S. 9:3529 (West Supp.1980).

661 F.2d at 903.

The *Gallois* transaction was governed by the Louisiana Consumer Credit Code, and this transaction is governed by the Louisiana Sales Finance Law. Since both statutes require the acceleration rebate and voluntary rebate policies to be the same, we hold that *Gallois* has resolved this issue in defendant's favor. Plaintiffs maintain that *Gallois* does not govern the instant case because the conflicting disclosure in *Gallois* was on the *rear* of the contract form and hence not part of the federal disclosure statement required by TILA and Regulation Z. In this case, they add, the conflicting disclosures were on the front of the contract form. Plaintiffs neglect to mention that the *Gallois* court did not rely on this asserted distinction for its decision. In fact, it is mentioned nowhere in the decision; we, therefore, refuse to credit it.

As a final point of appeal, the plaintiffs contend that the creditor's failure to adequately disclose the waiver of homestead, personal property, and pension fund exemptions constitutes a violation of Regulation Z and the TILA. The promissory note contained a statement of the financial obligation into which the plaintiffs were entering. In addition, it concluded with the statement "[a]ll exemptions are hereby waived." Plaintiffs state that when a borrower waives his state law right to exemption from seizure of the homestead and other items of property, that waiver constitutes a security interest which must be disclosed according to Regulation Z. *See Elzea v. National Bank of Georgia,* 570 F.2d 1248, 1250 (5th Cir.1978). Defendant does not challenge this statement of law; instead, the creditor argues that this vague statement is not an effective waiver of any exempt property. Consequently, Regulation Z is simply inapplicable here.

The Louisiana Code provides that the following property is exempt from seizure:

> (1) Seventy-five percent of his disposable earnings for any week, but in no case shall this exemption be less than an amount in disposable earnings which is equal to thirty times the federal minimum hourly wage in effect at the time the earnings are payable or a multiple or fraction thereof, according to whether the employee's pay period is greater or lesser than one week. However, the exemption from disposable earnings for the payment

of a current or past due child support obligation, or both, is fifty percent of disposable earnings. The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

(2) The tools, instruments, and books necessary to the exercise of a trade, calling, or profession by which he earns his livelihood, in whole or in part, provided that motor vehicles and trailers, except one pickup truck and trailer actually used in his trade, shall not be deemed to fall within the provisions of this paragraph;

(3) A right of personal servitude, of use and habitation, of usufruct of the estate of a minor child, and the income from total property; and

(4) The clothing, bedding, linen, chinaware, nonsterling silverware, glassware, living room, bedroom, and dining room furniture, cooking stove, heating and cooking equipment, kitchen utensils, pressing irons, washers, dryers, refrigerators, deep freezers (electric or otherwise) used by him or a member of his family; the family portraits; his arms and military accoutrements; the musical instruments played or practiced on by him or a member of his family; and the poultry, fowl, and one cow kept by him for the use of his family.

La.Rev.Stat.Ann. 13:3881 (West Supp.1982).

The language at issue here clearly purports to effect a waiver of these exemptions. Neither party can present any Louisiana case law concerning the effectiveness of such language to accomplish such a waiver. We are also unable to find a Louisiana court resolution of this matter. Therein lies the problem. The effectiveness of this

waiver is clearly unknown; indeed, the waiver may very well be valid. Given the unsettled nature of the law in this area, it would certainly be possible for a creditor to bring a deficiency judgment action seeking to reach the very property itemized above. For this reason, its scope should have been adequately set out to the borrower. This was not done here. We must, therefore, hold this to be a violation of the TILA.[6]

For the reasons set forth herein, we reverse in part the judgment of the court below.

AFFIRMED IN PART; REVERSED IN PART.

---

6. The general rule of law, as expressed at 94 A.L.R.2d 967, 974, provides that a general waiver of personal exemptions is invalid. Even if Louisiana law did decide to follow this rule, the creditor would not necessarily be excused. Why, after all, would a creditor place this language in a note if he believed it to be invalid?

This Court can envision an unscrupulous creditor using this language as a club against a poorly informed debtor. This is precisely the kind of situation which the TILA is designed to prevent and one that should be guarded against.