**FIRST ACADIANA BANK, Petitioner,**

v.

**FEDERAL DEPOSIT INSURANCE CORP., Respondent.**

No. 87–4126.

United States Court of Appeals, Fifth Circuit.

Dec. 7, 1987.
Rehearing Denied Jan. 5, 1988.

---

Darryl J. Hebert, Hank Seldon Hannah, Eunice, La., for petitioner.

James A. Clark, Arthur L. Beamon, Asst. Gen. Counsel, Hoyle L. Robinson, Washington, D.C., for respondent.

Before REAVLEY, WILLIAMS, and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

First Acadiana Bank seeks review of a final administrative order by the Federal Deposit Insurance Corporation. The FDIC found the Bank in violation of the Truth–in–Lending Act and FDIC regulations and ordered the Bank to reimburse certain customers. We affirm.

I

In 1984, the FDIC notified First Acadiana Bank of Eunice, Louisiana, that it was in violation of the Truth-in-Lending Act and FDIC regulations. Since October 1, 1982, the Bank's policy has been to require each car-loan borrower to employ a bank-approved attorney to prepare a valid chattel mortgage on the car. For two-thirds of such customers, these legal fees were included in the amount financed by the Bank. The amount of the fee was always determined by the attorney and ranged from $55 to $151 per loan.[1]

When the Bank financed such a fee, it did not add it to the "finance charge" listed on the disclosure form presented to the borrower. Nor was the fee included in the computation of the annual percentage rate (APR) listed on the same form. Had these fees been included in the finance charge, the APR in any given loan would have been from half a point to ten points higher than that quoted by the Bank. However, the fees were included in the category "amount financed" and separately disclosed to the borrower.

After the Bank refused to alter its policy pursuant to the compliance examiner's report, the FDIC Board of Review issued a Notice of Charges and of Hearing. An administrative law judge entered an initial decision against the Bank that the FDIC's Board of Directors adopted in whole.

The FDIC order commands the Bank to cease and desist from failing to include the attorneys' fees as part of the finance charge on its disclosure form. The Board also ordered the Bank to identify all con-

---

1. These figures are based on a sample set of 51 loans made between September 1, 1987 and November 30, 1983, the period covered by the FDIC's compliance examination of the Bank.

sumer automobile loans it made since October 1, 1982, in which the finance charge and annual percentage rate were understated. The Bank must then reimburse each borrower to the extent of the understatement.

## II

The Truth–in–Lending Act requires the Bank to disclose to the borrower, among other things, three components of a credit transaction: the "amount financed," the "finance charge," and the "annual percentage rate." 15 U.S.C. § 1638 (1982). The APR is a function of the loan's duration, payment terms, and the finance charge. *See id.* § 1606 (1982).

The statute's definition of "finance charge" is:

the sum of all charges, payable directly or indirectly by the person to whom the credit is extended, and imposed directly or indirectly by the creditor as an incident to the extension of credit. The finance charge does not include charges of a type payable in a comparable cash transaction....

*Id.* § 1605.[2]

The statute also provides examples of finance charges. These include, among others, a "[s]ervice or carrying charge," a "[l]oan fee" or "finder's fee," a "[f]ee for an investigation or credit report," and a premium for "any guarantee or insurance protecting the creditor against the obligor's default." *Id.*

Under the Act's definition, the attorneys' fees obviously constitute part of the finance charge. Payment of the fees was

"incident to the extension of credit," because the Bank would not extend credit otherwise. *See Berryhill v. Rich Plan,* 578 F.2d 1092, 1099 (5th Cir.1978) ("The important question is whether the seller refuses to extend credit until the customer agrees to another charge."); *see also* Jonathan M. Landers, *Determining the Finance Charge Under the Truth In Lending Act,* 1977 Am.B.Found.Res.J. 45, 57–58. Likewise, the attorneys' fee to perfect a mortgage is not "of a type payable in a comparable cash transaction," because a cash sale would involve no security interest.

In addition, the fees were "imposed directly or indirectly by the creditor," and thus within the Act's definition. The Bank contends that the fee was imposed not by the Bank but by the attorney perfecting the mortgage insofar as the attorney set the amount of the fee and kept the proceeds. According to the Bank, its policy was simply the practical consequence of Louisiana's strict requirements for a valid chattel mortgage.

We reject the Bank's approach. The Bank has required its borrowers, as a condition to the extension of credit, to pay an avoidable economic cost. Louisiana law does not require the Bank to take a mortgage on a car loan, or to have an attorney complete the mortgage documents. The fact that the precise amount of the fee was set by a third party makes no difference.[3]

We also do not agree that the disputed fees could be finance charges only if the Bank had retained them.[4] *Cf. Abbey v. Columbus Dodge, Inc.,* 607 F.2d 85, 86 (5th Cir.1979) (finance charge includes filing fee

---

**2.** Regulation Z, issued by the FDIC, includes a similar definition of "finance charge":

The finance charge is the cost of consumer credit as a dollar amount. It includes any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit. It does not include any charge of a type payable in a comparable cash transaction.

12 C.F.R. § 226.4(a) (1987).

**3.** We do not read *Watts v. Key Dodge Sales, Inc.,* 707 F.2d 847, 850 (5th Cir.1983), to the contrary. In *Watts,* we ruled that a fee for notarizing a

chattel mortgage fell outside the finance charge. But we reached this result not because the creditor had not set or retained the fee, as Judge Williams' concurrence suggests, but rather because FDIC regulations specifically exempted such fees from the finance charge.

**4.** The Bank also asserts that the ALJ improperly considered the fact that the disputed fees were paid to attorneys having other relationships with the Bank. In fact, the judge expressly refused to reach the issue of whether the attorneys receiving the disputed fees "control or set Bank policy."

only partly retained by lender). Although the Bank retained no fee, it retained a substantial benefit from the attorneys' services: a perfected security interest.

It would be difficult to reconcile any other interpretation with the Act's explicit examples of finance charges, several of which involve payments to third parties. "Finders fees," a "fee for an investigation or credit report," or an insurance premium against the borrower's default all may be set and retained by a party other than the lender.

We also do not believe, as the Bank contends, that separate disclosure of the attorneys' fee eliminated the need to comply with the Act's particular requirements. Congress unambiguously set forth the procedures necessary to ensure informed borrowing. Accurate disclosure of the finance charge and APR is essential to the "informed use of credit" Congress sought to achieve. *See* 15 U.S.C. § 1601 (1982). Exclusion of these fees from the finance charge had the effect of understating the annual percentage rate by as much as ten percentage points. The Bank's non-compliance thus was more serious than the technical violations excused by some courts. *See Redhouse v. Quality Ford Sales, Inc.,* 511 F.2d 230, 237 (10th Cir.1975).

### III

■ The Bank also challenges the FDIC's order that the Bank reimburse the disputed fee to each borrower who did not receive statutorily adequate disclosure. We conclude that the FDIC's remedy is consistent with the congressional mandate.

The Truth–in–Lending Act allows the FDIC to

> require the creditor to make an adjustment to the account of the person to whom credit was extended, to assure that such person will not be required to pay a finance charge in excess of the finance charge actually disclosed or the dollar equivalent of the annual percentage rate actually disclosed, whichever is lower.

15 U.S.C. § 1607(e)(1). And under the Act, the FDIC

*shall require such an adjustment* when it determines that such disclosure error resulted from (A) *a clear and consistent pattern or practice of violations,* (B) gross negligence, or (C) a willful violation which was intended to mislead the person to whom the credit was extended. *Id.* § 1607(e)(2) (emphasis added). Because the Bank has stipulated that it engaged in a "pattern or practice" of excluding the disputed fees from the "finance charge," the Bank's policy was the kind of behavior for which restitution was statutorily mandated.

Even if we believed the Bank's extenuation of "good faith"—a plea belied by the Bank's refusal, to this date, to comply with the FDIC's order—the statutory remedy still would be appropriate. The enforcement section of the statute makes no good faith exception. Indeed, because the Act mandates reimbursement where there has been either a "pattern or practice" *or* a willful violation, it is implied that the "pattern or practice" need not be intentional or in bad faith.

The Bank's final complaint is that it would be unfair to make the Bank pay back fees it never received. Congress made no such exception to the reimbursement remedy, even though the examples of finance charges listed in the Act included fees paid to third parties. It is not our job to decide whether the legislative directive is just.

AFFIRMED.

JERRE S. WILLIAMS, Circuit Judge, specially concurring:

The opinion for the Court omits a highly significant fact in this case, and as a result reaches a conclusion which extends the definition of "finance charges" under the law beyond reasonable statutory limits. The critical fact is that the Bank recommended two attorneys regularly who were closely associated with the Bank to draft the chattel mortgages which the Bank required. The inclusion of those fees in the "amounts financed" portion of the disclosure form was automatic, and the bank collected the fees and paid the attorneys. Under these

circumstances I agree that these fees were finance charges.

At least some of the chattel mortgages were drafted by other attorneys in the community who were not recommended by and had no connection with the Bank. The FDIC takes the position that the fees charged by those attorneys also are finance charges of the Bank but then specifically eschews any attempt to take action against the Bank for failure to include those fees on the ground of pragmatic difficulty.

Since the opinion for the Court does not properly distinguish between a wholly independent action by a lawyer which is necessary and properly required by the Bank before it will issue a loan from the "in house" actions of the Bank in this case, I find it important to dispute this broad interpretation of the statute by the FDIC and by the panel opinion.

I start with the proposition that it is reasonable and sound for a Bank to require that before it gives an automobile loan it will demand a chattel mortgage. It is also reasonable for the Bank to require that the chattel mortgage be drafted by a lawyer. These are simply qualifications which a Bank has a right to make before it will engage in the voluntary act of granting a loan on an automobile. We are not here testing the right of the Bank to demand professional qualifications. Under the reasoning of the panel opinion, if the chattel mortgage had been drafted by the applicant on a standard form sold in the stores or anyone else, the cost of purchasing the form would, under the reasoning of the majority, constitute a "finance charge". If the Bank required that such loan applications be typed, the cost of typing the applications would be a finance charge. If the automobile in question had been purchased at a foreclosure sale, the cost of obtaining the requisite documents to establish clear title from the court clerk would also be a finance charge. I suppose even the ink or pencil used by an individual applicant to fill out an application would be a finance charge.

I recognize that the regulation and the statute provide that all charges payable directly or "indirectly" by the person to whom the credit is extended and imposed directly or "indirectly" by the creditor are covered. But "indirectly" must have reasonable and sensible limits.

The net effect of the position of the panel majority is the implication that the Bank does not have the right to demand the chattel mortgage in connection with the automobile loan because the law does not "require" that it obtain a chattel mortgage. Thus, while it is free to do so, it must include the cost of this completely reasonable requirement in its competitive interest rate. I venture that it would be remarkable indeed if the State of Louisiana would be willing to hold in a case in which the Bank charged the maximum interest rate that the fact that to qualify for the loan a wholly independent hiring of an attorney by the consumer to help prepare the loan application papers would result in a finding that the Bank was charging usurious interest. Yet this is the implication of the majority opinion. I cannot read the statute that broadly.

"Indirect" is, of course, one of the most illusive concepts in the law. It can run the gamut from the broadest of meaning to the narrowest. In breadth we have the constitutional "indirect effect" upon interstate commerce of home grown wheat for home grown consumption only, *Wickard v. Filburn*, 317 U.S. 111, 663 S.Ct. 82, 87 L.Ed. 122 (1942) and the fact that all federal taxes, to the shock of many taxpayers, are "indirect" under the Constitution Art. I, Sec. 9, Par. 4 and the Sixteenth Amendment (virtually all experts are now in agreement that a net income tax is an indirect tax. The Sixteenth Amendment, however, was passed to overturn a contrary Supreme Court decision.) On the other hand, the narrow meaning of "indirect" covers such instances as a routine real estate transaction in which the property is conveyed through a third person or the creation of a third party beneficiary under a contract.

This sweeping vagueness of the word "indirect" simply requires an analysis of the use of the word in context. I for one

cannot conceive that a wholly independent fee paid directly to an attorney or someone else to help in an application for a loan to a Bank must be considered a "finance charge" of the Bank and could result in a claim of usury against the Bank. These are not finance charges by the Bank at all.

We have guidance on these matters in our own prior decisions. In *Berryhill v. Rich Plan of Pensacola*, 578 F.2d 1092, 1099 (5th Cir.1978), we undertook to define those charges required to be included as "finance charges" in the Truth in Lending Act. "The important question is whether the seller refuses to extend credit until the customer agrees to another charge." An independent legal fee paid by the debtor directly to the attorney is not such a required charge. It is a matter of a completely personal arrangement between attorney and client. In *Watts v. Key Dodge Sales, Inc.*, 707 F.2d 847 (5th Cir.1983), contrary to an informal staff interpretation letter of the Federal Reserve Board, we held that the notarial fee incurred by the bank in obtaining the required authentication of a chattel mortgage need not be listed as a "finance charge" so long as the form disclosed by itemization that the debtor was being required to pay the bank for it. From these two cases we discover that if the charge is something the Bank does not collect and with which it has nothing to do it is not an indirect finance charge and that some charges even collected by the Bank can be excluded from finance charges as long as they are properly disclosed by itemization to the consumer.

I concur fully in the holding in this case, including the requirement of payment of back fees to the consumer, because all that the FDIC is undertaking to enforce are the fees that arose from the preparation of the chattel mortgages by the two lawyers who had close connections with the Bank and worked with the Bank under circumstances which led the Bank automatically to collect those attorneys fees as part of the cost of obtaining the loan. These fees are distinguishable from the notarial fee in *Watts* because in *Watts* notarization was required by law although the fee itself was not set by law. Beyond Banks themselves indi-

rectly furnishing the legal services, sensible and reasonable requirements of Banks that lead to wholly independent hirings of help by loan applicants with direct payment of fees from the applicants to the persons hired are not within the statutory definition of finance charges. The FDIC claims that they are. But it disavows any attempt to enforce its own rule under those circumstances. This is not the way the law should be applied nor is it intended to be applied.

I concur fully in the decision in this case but on the narrower ground set out in this opinion.