**Bill DEMITROPOULOS, on behalf of himself and all others similarly situated, Plaintiff,**

v.

**BANK ONE MILWAUKEE, N.A.; and Team Chevrolet, Inc., doing business as Team Chevrolet Geo, Defendants.**

**No. 95 C 1753.**

United States District Court, N.D. Illinois, Eastern Division.

Feb. 12, 1996.

Daniel A. Edelman, James O. Latturner, Cathleen M. Combs, Tara Leigh Goodwin, James Eric Vander Arend, Michelle Ann Weinberg, Rick D. Young, Edelman & Combs, Chicago, IL, O. Randolph Bragg, Chicago, IL, for plaintiff.

Richard F. Zehnle, Diane Marie Kehl, Christine A. Provost, Vedder, Price, Kaufman & Kammholz, Chicago, IL, for Bank One Milwaukee, N.A.

Gary Feiereisel, Terrence Franklin Guolee, Steven R. Johnson, Frank Kasbohm, Fraterrigo, Best & Beranek, Chicago, IL, for Team Chevrolet Inc.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

Plaintiff Bill Demitropoulos ("Demitropoulos") sues defendants Bank One Milwaukee, N.A. ("Bank One") and Team Chevrolet, Inc. d/b/a Team Chevrolet and GEO ("Team Chevy"), alleging that Bank One's standard automobile form lease violates the Consumer Leasing Act, 15 U.S.C. § 1667 *et seq.* (count I), and the Illinois and Wisconsin Consumer Fraud Acts (count II). Demitropoulos contends that Bank One unlawfully failed to make, or improperly made, certain disclosures required under the Consumer Leasing Act, imposed excessive and unreasonable early termination charges, and failed to disclose certain material information, in particular, the "capitalized cost" of the leased automobile. Additionally, Demitropoulos asserts a breach of warranty claim against defendants (count III). Demitropoulos seeks to bring counts I and II as a class representative; count III is brought individually. Defendants' motion to dismiss [1] is presently before the Court as is Demitropoulos' motion for class certification.

### RELEVANT FACTS

For purposes of a Rule 12(b)(6) motion to dismiss, we accept as true all well-pleaded factual allegations and draw all reasonable inferences in favor of the plaintiff. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir.1995). The following recitation of facts is drawn from Demitropoulos' complaint.

On December 12, 1994, Demitropoulos entered into an automobile lease with Bank One covering the lease of a 1994 Chevrolet Corvette ("Lease"). Demitropoulos signed the Lease at Team Chevy, which arranged the Lease. The term of the Lease was 24 months, the total amount of payments under the Lease was less than $25,000, and the vehicle was leased for personal as opposed to business purposes.

In count I of his complaint, Demitropoulos contends that Bank One's Lease does not comply with the Consumer Leasing Act in several respects [2]: (1) The Lease does not disclose the circumstances under which the consumer can voluntarily terminate the lease prior to the scheduled expiration date and the charge for such early termination; (2) the Lease results in unreasonable early termination charges; (3) the Lease improperly contains material disclosures required by the Consumer Leasing Act on the back of the contract, below the lessee's signature—these include identification of the party responsible for maintaining and servicing the vehicle, and certain of the charges for delinquency, default, or late payments; (4) the Lease does not affirmatively state whether there are ex-

---

1. By a minute order date January 2, 1996, this Court granted Team Chevy's motion to adopt Bank One's motion to dismiss. Team Chevy also adopted Bank One's opposition to Demitropoulos' motion for class certification.

2. Rather than detail the pertinent Lease provisions here, we shall merely summarize the crux of Demitropoulos' claims now and quote the pertinent provisions later within the context of discussing whether the Lease complies with the Act's requirements.

press warranties from the manufacturer to the lessee and certain Lease provisions dealing with warranties are misleading and inaccurate; and (5) the Lease's late payment charge is ambiguous in that it fails to disclose how it is computed when part of the payment is made on time.

In count II of his complaint, Demitropoulos contends that by failing to disclose the "capitalized cost" of the leased vehicle [3], and by failing to make (or improperly making) disclosures required under the Consumer Leasing Act, the Lease violates the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, and the Wisconsin Consumer Fraud statute, Wis.Stat. § 100.18.

In addition to the foregoing class counts, Demitropoulos also asserts an individual breach of warranty claim against the defendants, contending that the Corvette he leased is not merchantable as a luxury sports car. Defendants move to dismiss all three counts for failure to state a claim. We address defendants' contentions as to the three counts in turn below. Thereafter, we address Demitropoulos' motion for class certification as to counts I and II.

### ANALYSIS

#### Rule 12(b)(6) Standards

A motion to dismiss tests the sufficiency of the complaint, not the merits of the suit. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir.1990). The only question is whether relief is possible under any set of facts that could be established consistent with the allegations. *Northern Trust Co. v. Peters*, 69 F.3d 123, 129 (7th Cir.1995); *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir.1992) (citing *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). All well-pleaded facts are taken as true, all inferences are drawn in favor of the plaintiff and all ambiguities are resolved in favor of the plaintiff. *Northern Trust*, 69 F.3d at 129; *Dawson v. General*

*Motors Corp.*, 977 F.2d 369, 372 (7th Cir. 1992).

#### I. Consumer Leasing Act

In 1976, Congress enacted into law the Consumer Leasing Act ("Act" or "CLA"), 15 U.S.C. § 1667–1667e, as an amendment to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* The Board of Governors of the Federal Reserve System was given rule-writing authority for implementing the CLA; the Board's Regulation M, 12 C.F.R. part 213, implements the Act. The purpose of the Regulation "is to assure that lessees of personal property are given meaningful disclosures of lease terms, to delimit the ultimate liability of lessees in leasing personal property and to require meaningful and accurate disclosures of lease terms in advertising." 12 C.F.R. § 213.1(b). Because the CLA is contained within TILA, the general rules of construction applicable to TILA apply to the CLA; and, as with TILA, the CLA must be liberally construed in the consumer's favor, *Kedziora v. Citicorp Nat'l Servs., Inc.*, 780 F.Supp. 516, 519 (N.D.Ill. 1991); *cf. Rodash v. AIB Mortgage Co.*, 16 F.3d 1142, 1144 (11th Cir.1994) (noting that the Truth in Lending Act is liberally construed in favor of the consumer), and "even the most technical disclosure violations-whether or not they cause actual damage or deception-may trigger liability for the offending creditor." *Kedziora*, 780 F.Supp. at 519; *see also Dwyer v. Barco Auto Leasing Corp.*, 903 F.Supp. 205, 210 (D.Mass.1995). With this background and standards in mind, we now turn to consider Demitropoulos' CLA claims.

#### 1. Early Termination Conditions

The Consumer Leasing Act requires "[a] statement of the conditions under which the lessee or lessor may terminate the lease prior to the end of the lease term and the amount or method of determining the amount of any penalty or other charge for early termination." 12 C.F.R. § 213.4(g)(12);

---

**3.** The term "capitalized cost" is a term of art. Essentially it refers to the base price or acquisition value of the leased vehicle. The capitalized cost is used to calculate the amount of deprecia-

tion charged to the lessee over the course of the lease and to determine the amount of periodic payments.

*see also* 15 U.S.C. § 1667a(11). Defendants maintain that ¶ 13 of the Lease complies with the Consumer Leasing Act's early-termination disclosure requirements. That paragraph provides in pertinent part:

**13. EARLY TERMINATION AND DEFAULT**

a. We may, at our option, terminate this Lease prior to the end of its term under any of the following conditions, which also constitutes default hereunder:

 1. You do not make a payment when due;

 2. You fail to comply with any of the terms and conditions of the Lease;

 3. You are the subject of a proceeding in bankruptcy . . .;

 4. You fail to comply with the minimum insurance requirements of the Lease . . .;

 5. You have made any material misrepresentations on your Lease application concerning credit or insurance information;

 6. You fail to answer traffic summons or pay fines when due;

 7. You die;

 8. You fail to notify us in writing within thirty days after you move.

If you default, we will have all rights and remedies provided by law. We will have the right to sue you for damages, and terminate the Lease and take the Vehicle without prior demand. . . .

b. The charge for early termination will be calculated as follows: . . .

Lease ¶ 13a. Demitropoulos complains that the foregoing provisions are defective insofar as they do not disclose the circumstances under which a *lessee* may terminate the Lease prior to the end of its term. Defendants maintain that the Lease "addresses"

this issue, stating, "Should a lessee decide to terminate the Lease early, the condition for doing so is that he pay the charges indicated by the formula listed in the agreement." Defs.' Mem. at 2–3.

■ Although defendants' argument has some superficial appeal, it is unpersuasive. Both the Act and the regulations promulgated thereunder require disclosure of the conditions, if any, under which both the lessor and the lessee may terminate the lease. *See* 15 U.S.C. § 1667a(11); 12 C.F.R. § 213.4(g)(12).[4] The Bank One Lease does not clearly do this. Instead, the Lease merely informs the consumer of the conditions under which Bank One may, at its option, declare a default and terminate the lease early. There is no disclosure of the conditions under which a lessee may voluntarily terminate the lease early. As the lease provisions are presently written, a reasonable consumer is left with the impression that he or she has but one option for early termination under the Lease—namely, to put oneself in the position of default as defined in ¶ 13(a), which may well be an undesirable course of action for many. If, in fact, the lessor may voluntarily terminate the lease early, defendants have failed to disclose this fact.

■ As to defendants' suggestion that the Act's early termination disclosure requirements are met because ¶ 13(b) of the Lease sets out the method for calculating early termination charges and (the argument goes) a reasonable consumer would thereby understand that he or she may voluntarily terminate the Lease prematurely on the condition that he or she pay the charge indicated by the formula, we cannot agree. Read in context, this is, at best, a strained reading of ¶ 13. An ordinary consumer, we believe, would read ¶ 13(b) in conjunction with

---

4. In stating this assertion, we are cognizant that the language of the Act and regulation calls for disclosure of the conditions under which the "lessee *or* lessor" may terminate the lease. However, we find that the appropriate construction of the word "or" in this context is that it be understood in the conjunctive sense. Reading the Act as requiring disclosure of *either* the lessee's early termination conditions *or* the lessor's, but not both would surely be contrary to Con-

gress' intent—particularly in view of the Act's express purpose of assuring meaningful disclosure of the terms of leases and Congress' recognition that a large number of automobile leases are terminated early by customers who voluntarily wish to do so (as opposed to early involuntary terminations resulting from default). *See* S.Rep. No. 590, 94th Cong., 2d Sess. (1976), *reprinted in* 1976 U.S.C.C.A.N. 431, 435.

¶ 13(a), and understand ¶ 13(b)'s early termination charge to apply simply to cases in which the lessor declares a default and terminates the Lease early as it is allowed to do pursuant to ¶ 13(a)—*not* to cases of voluntary early termination (which is nowhere discussed in the Lease). That the charge for early termination set out in ¶ 13(b) also applies to cases in which a lessee voluntarily terminates the Lease early is by no means self-evident from the Lease particularly because the Lease provides no indication that such voluntary early termination is even contemplated.

■ It may prove to be the case that Bank One does not allow lessees to voluntarily terminate Leases early at all.[5] In that case, Bank One's failure to disclose that fact may or may not be a violation of the disclosure requirements. *See* 12 C.F.R. § 213 Supp. I-CL-1, *Section 213.4–Disclosures,* ¶ 4(g) (stating that disclosures need only be made as applicable and that disclosures not relevant to a particular transaction may be eliminated).[6] But we need not decide that question now. On a motion to dismiss, we ask only whether the plaintiff could prove some set of facts entitling him or her to relief. If Demitropoulos establishes that Bank One allows voluntary early termination and has failed to disclose that fact, he may establish a disclosure violation. Accordingly, to the extent that defendants' motion to dismiss is predicated on the position that the Lease adequately discloses the conditions for early termination by the lessor, the motion is denied.

2. *Unreasonableness of, or Inaccurate Disclosure of, Early Termination Charges*

■ Paragraph 25 of Demitropoulos' complaint challenges the Lease's early termination disclosure on additional grounds. In pertinent part, that paragraph reads:

> If ¶ 13 were enforced as written, Bank One would collect unreasonable early termination charges. . . . If ¶ 13 is not enforced as written, the lease fails to disclose the

actual formula used upon early termination.

Compl. ¶ 25

As defendants correct note, Demitropoulos does not allege that he, in fact, terminated the Lease or wished to terminate the Lease. In *Highsmith v. Chrysler Credit Corp.,* 18 F.3d 434 (7th Cir.1994), the Seventh Circuit held that a lessee who has not yet terminated a lease cannot state a valid claim under 15 U.S.C. § 1667b(b) challenging the reasonableness of an early termination charge. *Id.* at 438. In reaching this conclusion the court noted that under § 1667b(b), a penalty for early termination must be " 'reasonable in the light of the anticipated or actual harm [to the lessor],' " *id.* at 437 (quoting 15 U.S.C. 1667b(b)). Where a lessee has not terminated a lease early, there is no way to determine if the early termination charge is reasonable in light of the actual harm to the lessor at the time of the termination. "Thus there is no conceivable means by which he could prove that the early termination charge is unreasonable in light of the actual harm to [the lessor]; one cannot prove facts about the specific details and consequences of an event that has not yet occurred." *Id.* at 438. Accordingly, to the extent that Demitropoulos challenges the reasonableness of the Lease's early termination charge, *Highsmith* compels the conclusion that this claim must be dismissed.

Demitropoulos attempts to overcome this obstacle by relying on his alternative allegation in paragraph 25, which reads as follows: "If ¶ 13 is not enforced as written, the lease fails to disclose the actual formula used upon early termination." Compl. ¶ 25. In his memorandum in opposition to defendants' motion to dismiss, Demitropoulos generously characterizes this allegation as follows: "Cmplt., ¶ 25, alleges that Bank One may not actually apply the default termination formula specified in Lease ¶ 13, because the charge specified is so onerous as to be unenforceable." Pl.'s Mem. at 5. Of course, the actual allegation is not that "Bank One may not

---

5. This seems highly unlikely, however, in view of defendants' position that lessors could voluntarily terminate the Lease early simply by paying the early termination charge set out in ¶ 13(b).

6. By way of example, the Staff Commentary notes, "if a lessor does not take a security interest no disclosure is required under § 213.4(g)(9)."

actually apply the default termination formula" but rather is that *if* Bank One does not apply the disclosed formula as written that constitutes a disclosure violation; and, even Demitropoulos' generous characterization of his allegation ("Bank One *may* not actually apply the ... formula") does not take him much closer to alleging that Bank One in fact *does not* apply the formula.

■ As the complaint presently stands, Demitropoulos is merely alleging a hypothetical state of affairs that might entitle one to relief; he does not allege an existent set of facts based on a reasonable inquiry that entitle him to relief. Absent a good faith allegation that proscribed conduct has actually occurred, this claim amounts to little more than a vehicle to conduct a fishing expedition into Bank One's early termination practices. We believe this to be an inappropriate use of processes.[7] Either Demitropoulos has a good faith belief that Bank One does not apply its formula or he does not. If he does, he should allege it; if he does not, he has no basis for proceeding on this theory. Accordingly, for the foregoing reasons this Court will dismiss without prejudice Demitropoulos' claim embodied in ¶ 25 of his complaint that either the early termination charge is unreasonable or it is not adequately disclosed.[8] Demitropoulos is free to file an amended complaint realleging his disclosure claim if he determines, after reasonable inquiry as required by Rule 11, that the claim is likely to have evidentiary support.

3. *Improper Warranty Disclosures*

■ Under 15 U.S.C. § 1667a(6), lessors are required to provide lessees with a written statement *"identifying* all express warranties and guarantees made by the manufacturer or lessor with respect to the leased property."

Bank One's warranty disclosure provides as follows:

NO WARRANTIES BY LESSOR

It is expressly agreed and understood (a) that the Vehicle has been selected by you "AS IS" and that WE MAKE NO WARRANTY EITHER EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE VEHICLE OR ANY PART OR ACCESSORY THEREOF, ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, or as to any obvious or hidden defects in material, workmanship or otherwise, and no such defect or unfitness shall in any way affect your obligations to comply with the terms of this Lease, and (b) that the only warranties applicable to the Vehicle are written warranties separately made by the manufacturer(s) or its dealers and representatives, and that your rights under any manufacturer's new vehicle warranty shall not be impaired under this Lease.

Lease ¶ 16.

In *Highsmith*, the Seventh Circuit found that a warranty disclosure that stated only that " '[t]he vehicle *may* be subject to a separate written warranty from the manufacturer' (emphasis added)," 18 F.3d at 440, "squarely violates the disclosure requirement of 15 U.S.C. § 1667(a)(6)." *Id.* The court reasoned that this disclosure statement amounted to no more than an "extraneous statement of the obvious-there may be warranties or there may not be." *Id.*

While Bank One's warranty disclosure is not quite as transparently empty as the disclosure involved in *Highsmith*, we find that it is nevertheless insufficient to meet the strict statutory disclosure mandate. The statement "that the only warranties applicable to the Vehicle are written warranties separately made by the manufacturer(s) or its dealers

7. This is quite different than alleging a good faith belief that *X* has occurred and then relying on discovery practice to gather evidentiary support for the allegation.

8. In complaint ¶ 27, Demitropoulos asserts that "Bank One's [early termination] formula places upon the lessee the risk that the vehicle will bring a low price because of vehicle defects, without making it clear that this is being done." Insofar as Demitropoulos is attempting here to

articulate a disclosure violation, the claim is insufficient. The Bank One Lease sets forth the early termination formula. That is all it is required to do. In particular, the Lease need not disclose that the formula has the effect of placing a risk on the lessee. As Judge Shadur remarked in *Kedziora*, "Regulation M permits disclosure of 'methods or amounts' and does not require disclosure of *effect*." 780 F.Supp. at 530.

and representatives" does not unequivocally indicate whether, in fact, the manufacturer has made any such written warranties, let alone "identify" any such warranties.[9] This is particularly true when that statement is read in conjunction with the second clause: "your rights under *any* manufacturer's new vehicle warranty shall not be impaired under this Lease." We find that a reasonable consumer could easily read this latter clause as indicating that rights under manufacturer's warranties, *if any*, will not be impaired. It cannot be disputed that no particular manufacturer's warranty is identified or referenced by the Lease. At the very least, the Lease admits of uncertainty regarding whether any written manufacturer's warranties exist.

■ This uncertainty is further engendered by the fact that the disclosure purporting to identify applicable warranties begins with language that informs the lessee that he or she is selecting the vehicle "AS IS." As the Illinois Appellate Court observed in *Lake Bluff Heating & Air Conditioning Supply, Inc. v. Harris Trust & Savings Bank,* 117 Ill.App.3d 284, 292, 72 Ill.Dec. 665, 671, 452 N.E.2d 1361, 1367 (2d Dist.1983): "The term 'as is' is generally understood to mean that the buyer is purchasing goods in its [sic] present condition with whatever faults it [sic] may possess. The term is similar to terms such as 'with all faults' or 'in its present condition,' and implies that the seller is relieved of any further obligation to reimburse for loss or damage because of the condition of the goods." Thus, at least to the average

consumer, the opening proviso in ¶ 16 that "the Vehicle has been selected by you 'AS IS,'" may obscure the force of the subsequent statement "that the only warranties applicable to the Vehicle are written warranties separately made by the manufacturer." For all of these reasons, to the extent that defendants contend that the Lease's warranty disclosure provisions satisfy the CLA's disclosure requirements and that the claim should therefore be dismissed, the motion is denied.[10]

### 4. Disclosures on the Back of the Lease

■ The Consumer Leasing Act's disclosure regulations require that "[a]ll of the disclosures shall be made together on ... the contract or other instrument evidencing the lease on the same page and above the place for the lessee's signature." 12 C.F.R. § 213.4(a)(2). Demitropoulos alleges that certain required disclosures appear on the back page of the lease, below the lessee's signature. "These include the 'identification of the party responsible for maintaining or servicing the leased property together with a brief description of the responsibility, and a statement of reasonable standards for wear and use, if the lessor sets such standards,' 12 C.F.R. § 213.4(g)(8), and certain of the charges for 'delinquency, default, or late payments,' 12 C.F.R. § 213.4(g)(10)." Compl. ¶ 28. Defendants' contend that all required disclosures appear on the front side of the Lease. We agree with the defendants.

12 C.F.R. § 213.4(g)(8) calls for disclosure of "the person responsible for maintaining or

9. To avoid this equivocality, Bank One could have expressly referenced the applicable manufacturer's warranties. For example, the staff commentary to 12 C.F.R. § 213.4(g)(7), states: "The statement identifying warranties may be brief. For example, manufacturer's warranties may be identified simply by reference to the standard manufacturer's warranty." 12 C.F.R. § 213, Supp. I–CL–1.

10. Demitropoulos also argues that the Lease's warranty disclosure is misleading and confusing because it violates the Federal Trade Commission Rule Concerning Preservation of Consumer Claims and Defenses, 16 C.F.R. part 433 (the "Rule"), which requires a notice preserving certain consumer claims and defenses. However, despite Demitropoulos' assertions to the contrary, the Court finds that the Rule is inapplica-

ble to the instant Lease. On its face, the Rule applies to transactions involving a "consumer credit contract." The Rule defines a "consumer credit contract" as "[a]ny instrument which evidences or embodies a debt arising from a 'Purchase Money Loan' transaction or a 'financed sale,'" as those terms are further defined by the Rule. The definitions of "purchase money loan" and "financed sale" do not encompass the sort of closed-end consumer lease at issue here. Although there are circumstances under which a lease can be considered a "credit sale," *see* 12 C.F.R. § 226.2a(16), those circumstances are not present here. Accordingly, to the extent that Demitropoulos' disclosure claim is premised on a violation of the Rule (*see* Compl. ¶¶ 31–33), that aspect of the claim is dismissed.

servicing the leased property together with a brief description of the responsibility, and a statement of reasonable standards for wear and use, if the lessor sets such standards." Demitropoulos contends that the Lease violates this requirement because ¶ 18 of the Lease, captioned VEHICLE USE, appears on the back of the Lease.

We shall set out the contents of ¶ 18 momentarily; however, we shall first describe the contents of ¶ 12 (captioned STANDARDS FOR WEAR AND TEAR), which, in conjunction with ¶ 15, fully satisfy § 213.4(g)(8)'s mandate. Paragraph 12 provides (i) that the amount of the monthly lease payment is determined, in part, by the lessor's agreement to use the vehicle within the mileage limitations set out in ¶ 9 of the Lease, and that excess mileage will result in a charge of $.14 per mile; (ii) that it is the lessor's obligation to repair certain specified types of damage; and (iii) "except for reasonable wear and use, the Vehicle will be in good working condition [when returned] together with all original accessories and options." The paragraph goes on to detail a variety of wear and use standards such as: that the odometer must reflect the actual mileage (and in the event of evidence that the odometer has been tampered with, a formula for determining mileage is given); the Vehicle will have a matching set of tires with at least 25% of tread remaining; the engine, drive train and other mechanical and electrical parts shall operate properly and not be damaged; there will be no scratches, dents, pits, rust areas, mismatches of paint or cracks in the fenders, bumpers, grill, hood, trunk or roof; there will be no cracks in the windshield or windows and the interior will not be damaged; and, no special identification will appear on the Vehicle. Lease ¶ 12. Also, ¶ 15 of the Lease, captioned MAINTENANCE, REPAIRS AND OPERATING EXPENSES, expressly provides that maintenance, repairs, and costs and expenses resulting from use and operation of the vehicle are the lessee's responsibility.

▮ In contrast to the contents of ¶ 12, ¶ 18 states as follows:

You agree that the vehicle will be used primarily for personal, family or household use.

You further agree that you (a) will comply with, and will not violate, nor permit anyone else to violate, the applicable laws and regulations of local, state and federal governments concerning the operation of motor vehicles; and (b) will not use, or permit anyone to use the Vehicle for unlawful purposes.

In addition the Vehicle will (a) not be sublet; (b) not be used or operated by persons other than your employees, agents and embers of your immediate family, all of whom (i) must be properly authorized and licensed to operate the Vehicle; and (ii) will not be under the influence of alcohol or drugs while operating the Vehicle; (c) not be used for drivers training purposes or to transport passengers for hire; (d) not be used, or permitted to be used for any purpose which would cause any required insurance coverage to be suspended or cancelled; and (e) not be used in a reckless or negligent manner, nor in excess of its rated capacity; and (f) not to be relocated from the continental United States.

Lease ¶ 18. While this paragraph is captioned "VEHICLE USE," we do not believe that the contents of this paragraph fall within the intended ambit of § 213.4(g)(8)'s disclosure requirements. The conditions set out in ¶ 18 are best characterized as just that— terms and conditions of the Lease, violation of which may result in a default under the Lease. Only the most woodenly literal reading of this paragraph could lead to the conclusion that it sets out "reasonable standards for wear and use" as that phrase is intended by Regulation M; and, we do not believe that the admonition that the CLA should be liberally construed requires this Court to give such an unnatural reading to the phrase "reasonable standards for wear and use." When the phrase "reasonable standards for wear and use" is read in the context of § 213.4(g)(8)'s entire language, it is evident that phrase relates to the servicing and maintenance requirements set out in the first portion of the section rather than restrictions on use—such as a prohibition of unlawful

use-that have nothing whatsoever to do with maintaining and servicing the lease vehicle.

We have carefully reviewed Demitropoulos' other allegations concerning disclosures on the back of the Lease and find them to be equally without merit. With respect to disclosure of taxes, Regulation M calls for disclosure of the "total amount paid or payable by the lessee during the lease term for official fees, registration, certificate of title, license fees, or taxes." 12 C.F.R. § 213.4(g)(4). If this amount is unknown at the time of consummation, it may be estimated. *Id.* § 213.4(d). The Bank One Lease discloses this amount on the front of the Lease. Lease ¶ 10. The fact that ¶ 21 of the Lease, which appears on the back of the Lease, imposes obligations on the lessee for, *inter alia,* the payment of taxes, licensing fees, etc. does not affect the adequacy of Bank One's required disclosure. We also find no support in either the Act or Regulation M—and Demitropoulos does not cite any authority—for his contention that ¶ 22 (providing that the lessee will indemnify and hold the lessor harmless from any liability, loss, etc. resulting from claims arising out of the manufacture, delivery etc. of the leased vehicle), ¶ 23 (requiring reimbursement by the lessee to the lessor for expenses incurred in the event of confiscation of the vehicle by governmental agencies), ¶ 24 (requiring the lessee to defend the lessor's title and to keep it free of liens and encumbrances) are required disclosures that must be disclosed on the front of the Lease. Accordingly, all of Demitropoulos' claims relating to disclosures on the back of the Lease are dismissed.

5. *Ambiguity in the Late Payment Charge*

Paragraph 17 of the Lease sets out the delinquency charges applicable to late payments. In pertinent part, it reads as follows:

> You will pay a delinquency charge on any Monthly Lease Payment which is ten (10) days or more late, of 5% of each such payment or the Maximum Delinquency

Charge whichever is the lesser amount. . . .

Lease ¶ 17. Demitropoulos contends that the late payment charge set out in ¶ 17 is ambiguous in that it fails to disclose how the 5% is computed when a partial payment is made on time (*i.e.,* is it 5% of the total monthly lease payment or 5% of the outstanding payment). Defendants respond that the CLA does not require lessors to disclose the method for determining late partial payments. This response, of course, misses the point of the claim, which is that the late payment disclosure is ambiguous.

In *Watts v. Key Dodge Sales, Inc.,* 707 F.2d 847 (5th Cir.1983), the Fifth Circuit found, in the context of a TILA action, that a delinquency disclosure materially equivalent to ¶ 17 [11] was "[a]t the very least . . . ambiguous, thus violating the TILA or Regulation Z." *Id.* at 852. The defendant in *Watts* argued that the delinquency charge disclosure clearly entitled it to impose a 5% charge solely on that portion of the installment that remains unpaid ten days after the due date. *Id.* The court rejected this argument noting that "a careful reading of the delinquency provision leads us to the conclusion that it allows the creditor to impose a 5% charge on the full amount of any unpaid, or partially paid, installment." *Id.* Confronting the same issue, the Eleventh Circuit followed *Watts* in *In re Whitley,* 772 F.2d 815 (1985), holding that a delinquency disclosure materially equivalent to ¶ 17 was "vague and ambiguous" and therefore violated TILA and Regulation Z. In accord with the holdings of the Fifth and Eleventh Circuits, this Court finds that Demitropoulos has stated a claim as to whether the delinquency disclosure in Bank One's Lease is ambiguous in violation of the Consumer Leasing Act and Regulation M. Acordingly, defendants' motion to dismiss this claim is denied.

II. *State Law Consumer Fraud Violations*

In count II, Demitropoulos maintains that defendants engaged in unfair and deceptive

---

11. The disclosure at issue in *Watts* read: "Seller may collect, and Buyer hereby agrees to pay, a delinquency . . . charge on any installment which shall not have been paid within 10 days after the date on which it becomes due and payable, in an amount not exceeding 5% of each such unpaid installment or $5.00 whichever is less. . . ." 707 F.2d at 852.

acts under the Illinois Consumer Fraud Act, 815 ILCS 505/2 *et seq.*, and violated a fraudulent representation provision under Wisconsin law, Wis.Stat. § 100.18(1), by violating the CLA's disclosure requirements and by failing to disclose the "capitalized cost" of the leased vehicle.

■ At the outset, we are confronted with a choice-of-law issue. When deciding an issue governed by state law-either when exercising its supplemental jurisdiction under 28 U.S.C. § 1367, or, its diversity jurisdiction under 28 U.S.C. § 1332—a federal court applies the forum state's choice of law rules. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 20 F.3d 713, 718–19 (7th Cir.1994), *rev'd. on other grounds,* —— U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995). Illinois courts generally follow the Restatement (Second) of Conflict of Laws in determining the governing law in a contract dispute. Section 187 of the Restatement applies to those cases where, as here, the parties to a contract have included an express choice of law provision in their contract. Under § 187, the parties' choice of law will be given effect unless it would violate fundamental Illinois public policy and Illinois has a materially greater interest in the litigation than the chosen state. *Maher & Assocs., Inc. v. Quality Cabinets*, 267 Ill.App.3d 69, 76, 203 Ill. Dec. 850, 856, 640 N.E.2d 1000, 1006 (2d Dist.1994); *International Surplus Lines Ins. Co. v. Pioneer Life Ins. Co. of Ill.*, 209 Ill. App.3d 144 152–53, 154 Ill.Dec. 9, 14, 568 N.E.2d 9, 14 (1st Dist.1990). The Illinois Appellate Court has stated that "the public policy considerations must be strong and of a fundamental nature to justify overriding the chosen law of the parties." *Potomac Leasing Co. v. Chuck's Pub, Inc.*, 156 Ill.App.3d 755, 759, 109 Ill.Dec. 90, 93, 509 N.E.2d 751, 754 (2d Dist.1987) (giving effect to choice of law provision stating that Michigan law governs lease agreement). Further, "[t]he mere fact that state laws may differ does not necessarily constitute a sufficient basis for the assertion that the law of a foreign state is contrary to the public policy of the forum." *Champagnie v. W.E. O'Neil Constr. Co.*, 77 Ill.App.3d 136, 139, 32 Ill.Dec. 609, 395 N.E.2d 990 (1st Dist.1979).

■ The Lease contains a provision entitled "Governing Law," which reads as follows: "This Lease will be construed and enforced in accordance with the laws of the State in which we are located." Lease ¶ 28. The Lease defines the word "we" as meaning the lessor (and, where applicable, the lessor's assignee). Because Bank One is located in Milwaukee, Wisconsin, Bank One argues that Illinois law is inapplicable to the enforcement of the Lease. Demitropoulos attempts to overcome this initial obstacle to invoking Illinois law by arguing that the term "lessor" in the Lease is ambiguous because Team Chevy, who arranged the Lease, may also be considered a "lessor" for purposes of the Consumer Leasing Act. While Team Chevy is unquestionably a lessor for purposes of the Act, that fact does not compel the conclusion that Team Chevy is a "lessor" as that term is used in the Lease. The term "lessor" is clearly and unambiguously defined by the Lease as "Bank One, Milwaukee, N.A.". There is absolutely no suggestion whatsoever that anyone or anything other than Bank One is the Lessor under the terms of the Lease. Accordingly, we reject Demitropoulos' contention that the Lease is somehow ambiguous as to who the lessor is.

■ So, we proceed to the more substantial choice of law issue—*viz.*, whether giving effect to the choice of law provision would violate Illinois public policy. We conclude that it would not. The consequence of giving effect to the Lease's choice of law provision is that Demitropoulos must seek redress under Wisconsin laws designed to protect consumers, not Illinois laws. In the instant case, § 100.18 of the Wisconsin statutes provides an avenue of relief. That section provides in pertinent part:

> No person ... with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, ... or lease of any ... merchandise ... shall ... disseminate ... or place before the public ... in this state, in a newspaper, magazine or other publication ... or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating

to such purchase, sale ... or lease ... or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

Wis.Stat. § 100.18.

Giving effect to the Lease's choice of law provision has the effect of foreclosing Demitropoulos' reliance on Illinois' Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1 *et seq.* The Illinois Act makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact ..., in the conduct of any trade or commerce." 815 ILCS § 505/2.

Although there may be some differences in the precise scope of Wis.Stat. § 100.18 and 815 ILCS § 505/2, we cannot conclude that any such differences implicate public policy concerns that are sufficiently "strong and of a fundamental nature to justify overriding the chosen law of the parties." *Potomac Leasing,* 156 Ill.App.3d at 759, 109 Ill.Dec. at 93, 509 N.E.2d at 754. *See also Champagnie v. W.E. O'Neil Constr. Co.,* 77 Ill.App.3d 136, 139, 32 Ill.Dec. 609, 395 N.E.2d 990 (1979) (noting that "a court should not refuse to apply the law of a foreign state, however unlike its own, unless it is contrary to pure morals and abstract justice"). Accordingly, this Court shall give effect to the terms of the Lease. Demitropoulos' claim under Illinois law is therefore dismissed.[12]

■ Defendants contend that Demitropoulos fails to state a claim under Wis.Stat. § 100.18 because (1) § 100.18 does not apply to leases; (2) § 100.18 does not protect nonresidents of Wisconsin; and (3) Demitropoulos has failed to allege that he was injured by Bank One's allegedly deceptive representations. We reject the contention that

§ 100.18 does not apply to Leases because the plain language of the statute encompasses leases: "No person ... with intent to induce the public in any manner to enter into any contract or obligation relating to the purchase, sale, ... or *lease* of any ... merchandise ..." Although defendants urge upon this Court the contention that no court has ever applied § 100.18 to a lease agreement and that "[t]his Court should not break new ground in the interpretation of the Wisconsin statute," this is hardly a compelling argument. Defendants do not identify any authority holding that § 100.18 is inapplicable to leases nor do they offer any basis for disregarding the plain language of the statute. This Court finds that the statute applies on its face to leases.

■ As for defendants' contention that the statute does not protect nonresidents, we find no support for this proposition; and, the authorities cited for this proposition by the defendants do not so hold. In particular, *State v. Automatic Merchandisers of Am.,* 64 Wis.2d 659, 221 N.W.2d 683 (Wis. 1974), upon which defendants principally rely (employing the following parenthetical in conjunction with their citation to this case: "legislature intended to protect residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product") does not compel the conclusion that § 100.18 only gives rise to a cause of action for Wisconsin residents. In *Automatic Merchandisers,* the Wisconsin Supreme Court was discussing an amendment to § 100.18 that broadened the scope of that section beyond media advertising. In the context of that discussion the Court observed, "We think by this amendment that the legislature intended to protect residents of Wisconsin from any untrue, deceptive or misleading representations made to promote the sale of a product. It is not limited to media advertising." 221 N.W.2d at 686. The language relating to the protection of Wisconsin residents is far from a holding of the Court, let alone a holding that § 100.18's protections extend only to Wisconsin resi-

---

12. The Court has carefully evaluated all of Demitropoulos' arguments as to why the choice of law

provision in the Lease should not be given effect and find them to be without merit.

dents.[13] Defendants have failed to present any persuasive authority such as legislative history or actual court holdings that § 100.18 only gives rise to a cause of action for Wisconsin residents. We reject the contention. This Court's review of the statute leads to the conclusion that the Act may be violated so long as the allegedly deceptive or misleading representation was "ma[de], publish[ed], disseminate[d], circulate[d], or placed before the public, in [Wisconsin]" and the citizenship of the individual receiving the deceptive or misleading statement is of no consequence. In the instant case, it is a reasonable inference that Bank One made, disseminated, or circulated its Lease forms in Wisconsin and passed them on to dealers such as Team Chevy, who in turn, presented them to consumers. Under these facts, we find that Demitropoulos is not precluded from bringing his action under § 100.18, solely because he is not a Wisconsin resident.

 We turn now to defendants' argument that Demitropoulos' claim under § 100.18 must be dismissed because Demitropoulos has failed to allege that he was injured by Bank One's allegedly deceptive representations. Section 100.18(11)(b)(2) provides that "[a]ny person suffering pecuniary loss because of a violation of this section

by any other person may sue in any court of competent jurisdiction and shall recover such pecuniary loss...." Wis.Stat. § 100.18(11)(b)(2). Thus, we find that a suit for damages under § 100.18 requires a showing of actual pecuniary loss and that a mere showing of a misleading or deceptive statement or representation will not support a cause of action. In the instant case, Demitropoulos has not alleged that he has suffered any actual pecuniary loss, let alone a loss that was proximately caused by any misleading or deceptive statement. *See Tim Torres Enters., Inc. v. Linscott*, 142 Wis.2d 56, 70, 416 N.W.2d 670, 675 (Wis.App.Ct. 1987) (interpreting § 100.18(11)(b)(2) to require a causal connection between misrepresentations and the pecuniary loss suffered).[14] Furthermore, it is far from evident that Demitropoulos has suffered such a pecuniary loss. Accordingly, this Court shall dismiss Demitropoulos' claim under Wis.Stat. § 100.18. Out of an abundance of caution, however, this dismissal shall be without prejudice and with leave to file an amended complaint if Demitropoulos can allege-consistent with his obligations under Fed.R.Civ.P. 11—that he suffered pecuniary loss that was proximately caused by specific misrepresentations or deceptions.[15]

13. The Court cannot emphasize enough to members of the bar how misleading citations such as this detract from the credibility of attorneys appearing before the Court.

14. Demitropoulos' citation to *Johnson v. Steven Sims Subaru, Inc.*, 1193 U.S.Dist. LEXIS 11694 *36–*37 (N.D.Ill.1993), for the proposition that "A consumer who signs a disadvantageous contract as a result of the failure of a business to disclose material information is "damaged" in the ordinary sense of the word," Pl.'s Mem. Opp.Mot.Dis. at 22, is unavailing. In the first place, the *Johnson* opinion simply did not reach such an expansive holding. The *Johnson* court explicitly found that the plaintiff had alleged actual damages which were caused by particular deceptive practices: "Ms. Johnson alleges that she sought to terminate her lease, but cannot afford the allegedly unreasonable and unlawful early termination charges" and "Ms. Johnson seeks to terminate a lease under which she currently owes lease inception fees which she says were not initially disclosed, and she will inevitably incur substantial charges for early termination. Therefore, Ms. Johnson's complaint alleges sufficient damages from the allegedly deceptive conduct of Subaru Leasing to state a claim under the [Illinois Consumer

Fraud Act]." *Id*. In the instant case, Demitropoulos has failed to allege any concrete pecuniary damages, and has not attempted to connect any such damages to specific misrepresentations. There is another noteworthy aspect of the *Johnson* opinion (which both parties cite to the Court for various propositions). The *Johnson* opinion, is actually only a report and recommendation of a magistrate judge which was never entered by the district court judge presiding over the case. As Demitropoulos' counsel is well aware (for they were also counsel to the plaintiff in *Johnson*), the *Johnson* case settled before the district court judge ruled on the objections to the magistrate judge's report and recommendation that were filed by the parties in that case. Thus, citation to this opinion as authority is questionable to say the least; and, counsel's duty of candor to the Court ought to lead to disclosure of the fact that an opinion cited in a brief was never actually entered as an order in the case.

15. In this regard, we note that, although the materials submitted in connection with the briefing of the motion for class certification are not properly before the Court when considering defendants' Rule 12(b)(6) motion to dismiss, the

## III. *Breach of Warranty*

Count III of Demitropoulos' complaint purports to assert a breach of warranty claim against defendants. The gravamen of the breach of warranty claim is that "[t]he vehicle sold to plaintiff was unmerchantable as a luxury sports car." Compl. ¶ 72. The Court finds this claim to be foreclosed by the express warranty disclaimer contained in the Lease. As we have already discussed above, ¶ 16 of the Lease—captioned NO WARRANTIES BY LESSOR [16]—explicitly disclaims any warranties, express or implied, by the lessor. The language reads:

> It is expressly agreed and understood (a) that the Vehicle has been selected by you "AS IS" and that WE MAKE NO WARRANTY EITHER EXPRESS OR IMPLIED, AS TO THE CONDITION OF THE VEHICLE OR ANY PART OR ACCESSORY THEREOF, ITS MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE....

Lease ¶ 16. To the extent that Demitropoulos attempts to evade this language by contending that it is not conspicuous, the Court finds otherwise. We explicitly find that the Lease conspicuously discloses that, *vis-a-vis* the lessor, the lessee is leasing the vehicle "AS IS" and that the lessor makes no warranties, express or implied, specifically with respect to merchantability or fitness for any particular purpose.

The Court also rejects Demitropoulos' suggestion that to whatever extent the Court finds that the Lease violates the Consumer Leasing Act's warranty disclosure requirements, the disclaimer disclosure cannot be regarded as conspicuous for purposes of

the UCC. This Court's only determination regarding the adequacy of the Lease's warranty disclosures under the Consumer Leasing Act, is that the Lease's identification of manufacturer's warranties applicable to the leased vehicle is insufficient under the CLA's strict standards because it is not clear whether any such manufacturer's warranties exist. However, it is abundantly clear from (and conspicuously disclosed in) the Lease that Bank One disclaims all express and implied warranties. Thus, whatever uncertainty may exist as to applicable manufacturer's warranties, there is none as to the fact that Bank One makes no warranties. Accordingly, count III of the complaint is dismissed with prejudice.

## CLASS CERTIFICATION

Demitropoulos moves for class certification with respect to counts I and II pursuant to Fed.R.Civ.P. 23. Because this Court has dismissed count II (violation of the Illinois Consumer Fraud Act and Wis.Stat. § 100.18) without prejudice, we will not consider the motion for class certification with respect to that count at this time. In the event that that count is repleaded, we will revisit the issue.[17] With respect to his CLA claims (count I), Demitropoulos seeks certification of a class and subclass defined as follows. The proposed class consists of all persons who satisfy the following criteria:

a. They signed a lease prepared using the same printed form as Exhibit A to the complaint (*i.e.*, the Bank One Lease form 3/91).

b. The total payments on the lease were less than $25,000.

---

Court takes due notice of the fact that during his deposition Demitropoulos stated that "I don't even know what [capitalized cost] means" and capitalized cost was not something he was concerned with. Demitropoulos Dep. at 51.

16. This caption, like other paragraph captions in the Lease, is written in a font size substantially larger than that used in the body of the paragraph. Although it is difficult to tell from the copies of the Lease that have been provided to the Court, the caption also appears to be bolded. Regardless of whether or not the caption is actually bolded, the Court finds that it is conspicuously presented.

17. Without prejudging the issue, we will note that in view of our determination that liability under Wis.Stat. § 100.18 requires a showing of actual damages proximately caused by particular misrepresentations or deceptions, class certification would appear unlikely. It is difficult to discern how questions of law or fact could predominate over questions affecting only individual class members where questions of individual reliance are involved. We will, of course, reserve judgment on the issue until it is properly before the Court.

c. The lease was for more than four months.

d. The lease is marked as a consumer purpose lease.

e. The lease is still outstanding or was terminated within one year prior to the filing of this action.

The proposed subclass consists of all members whose leases were originated by Team Chevy.

■ Rule 23 requires a two-step analysis to determine whether class certification is appropriate. First, the action must satisfy all four requirements of Rule 23(a). That is, "the plaintiff must meet the prerequisites of numerosity, commonality, typicality, and adequacy of representation." *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 703 (7th Cir.1993) (internal quotation marks omitted). "All of these elements are prerequisites to certification; failure to meet any one of these precludes certification as a class." *Retired Chicago Police Association v. City of Chicago,* 7 F.3d 584, 596 (7th Cir.1993); *Harriston,* 992 F.2d at 703. Second, the action must satisfy one of the conditions of Rule 23(b).

*Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir.1977). The party seeking class certification bears the burden of establishing that certification is proper. *Retired Chicago Police Ass'n.,* 7 F.3d at 596. Demitropoulos seeks certification under Rule 23(b)(3), which requires that questions of law or fact common to class members predominate over questions affecting only individual members, and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy.[18]

■ Demitropoulos contends that all of the requirements of Rule 23(a) and (b)(3) are met. Defendants maintain that class certification should be denied because Demitropoulos' claims are not typical of the claims of the class and because Demitropoulos cannot adequately or fairly represent the interests of the class.[19] Defendants contend that Demitropoulos' claims are not typical of the class for three reasons: (1) his deposition testimony indicates that he never read the Lease and that he has little sense of what provisions the Lease does or does not contain; (2) his primary complaint is that the car

18. Rule 23(b)(3) provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

. . . . .

(3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

FED.R.CIV.P. 23(b)(3).

19. Defendants do not challenge the other two prerequisites under Rule 23(a), numerosity and commonality. Accordingly, the Court will deem those requirements met for purposes of this motion. The Court is satisfied, based on Demitropoulos' representations that the number of potential class members is sufficiently large so as to

make joinder impracticable. Moreover, the present dispute concerns a standard form lease signed by all proposed class members, who are otherwise unrelated and would unlikely be motivated to bring individual actions given the relatively small size of the claim. These factors militate in favor of class certification even where the number of class members is relatively small. *See, e.g., Swanson v. American Consumer Indus.,* 415 F.2d 1326, 1333 n. 9 (7th Cir.1969) (finding 40 class members sufficient for certification where individual class members are widely scattered and the amount at issue too small to warrant undertaking individual actions). The fact that this case involves a standard form lease also leads this Court to conclude that Rule 23(a)(2)'s commonality requirement is met in this case. A "common nucleus of operative fact" is generally enough to satisfy the commonality requirement. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992) (citing *Franklin v. City of Chicago,* 102 F.R.D. 944, 949–50 (N.D.Ill.1984)). A common nucleus of operative fact is typically found where, as in the instant case, the defendants have engaged in standardized conduct toward members of the proposed class. *Franklin,* 102 F.R.D. 944, 949 (N.D.Ill.1984). In the instant case, all proposed class members signed a standard lease contract with Bank One. Thus, their claims all involve the common question of whether the Bank One lease violates the CLA's disclosure requirements.

he leased was a lemon; and (3) he never attempted to terminate the Lease early until he totalled the vehicle in an accident and then used insurance proceeds to pay off the Lease.[20]

As the Seventh Circuit has explained:

"A class representative's claim is typical of the class claims if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory."

*De La Fuente v. Stokely–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983) (quoting H. Newberg, *Class Actions* § 1115(b) at 185 (1977)). The *De La Fuente* court further observed that:

The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiff and those of other class members. Thus, similarity of legal theory may control even in the face of differences of fact.

*Id.* The court went on to find the typicality requirement met where all members of the proposed class "were subject to the same allegedly unlawful practices." *Id.* That standard is plainly met here, where the allegations are that all members of the proposed class were parties to Bank One's standard lease contract. As has been noted on several occasions, "claims arising out of form contracts are particularly appropriate for class action treatment." *Cobb v. Monarch Finance Corp.,* 913 F.Supp. 1164, 1170 (N.D.Ill. 1995); *Haroco, Inc. v. American Nat'l. Bank & Trust Co.,* 121 F.R.D. 664, 669 (N.D.Ill. 1988) (noting that claims arising out of a standard contract presents a "classic case for treatment as class action," quoting *Kleiner v.*

*First Nat'l. Bank of Atlanta,* 97 F.R.D. 683, 692 (N.D.Ga.1983)).

If Demitropoulos was proceeding on a legal theory that required actual reliance on lease terms and injury proximately caused by that reliance, Demitropoulos' deposition testimony might well raise some concerns as to whether he is an appropriate class representative—and those are questions that we may have to answer in the event that Demitropoulos attempts to reallege his claims under Wis.Stat. § 100.18. For the moment, however, we need not resolve those questions. At this point, the Court is only considering class certification as to Demitropoulos' remaining claims under Count I. Those are all claims that allege disclosure violations under the CLA. Neither reliance nor actual damages are elements of a statutory damages claim alleging disclosure violations under the CLA. *See Shepeard v. Quality Siding & Window Factory, Inc.,* 730 F.Supp. 1295, 1299 (D.Del. 1990). Therefore, to the extent that defendants' contention that Demitropoulos' claims are not typical of the class claims is premised on the assertion that he did not read the Lease, we must reject it.

Similarly, we are not persuaded by Bank One's other arguments regarding typicality. The fact that Demitropoulos may have been chiefly interested in pursuing a "lemon law" claim does not diminish the typicality of his CLA disclosure claims. We suspect that it is not at all uncommon for plaintiffs unversed in the morass of federal regulations governing such things as lease and credit disclosures not to be principally interested in pursuing claims. More commonly, as is the case here, consumers will seek legal advice concerning causes of action about which they have some (albeit perhaps vague) familiarity such as "lemon laws,"

**20.** Since we have dismissed Demitropoulos' claims relating to early termination charges, we will not address this third argument regarding Demitropoulos' typicality. We note here that the Court learns for the first time from the memoranda submitted in connection with the motion for class certification that Demitropoulos actually terminated the Lease early after he totalled his leased Corvette. This fact does not appear in the complaint and we are therefore unable to consider it in connection with the motion to dismiss.

We do not know if Demitropoulos intends to amend his complaint to allege that he suffered injury as a result of unreasonable early termination charges; however, it is somewhat disturbing to the Court that any such amendment has yet to be made. It is a wholly inefficient enterprise to rule on motions in a piecemeal fashion and if that can be avoided it should. The absence of a compelling justification for delay may be a factor in considering any motion to file an amended complaint.

fraud, and breach of contract claims, only to learn from their counsel that their avenues of relief are broader than they envisioned. This neither makes their claims atypical class claims, nor does it suggest that the named plaintiff cannot or will not represent the class fairly and adequately.

This takes us to defendants' second contention, which appears to be that Demitropoulos will not provide fair and adequate protection for the interests of the class as required under Rule 23(a)(4). Rule 23(a)(4)'s adequacy requirement has three elements: (1) the chosen class representative cannot have antagonistic or conflicting claims with other members of the class, *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir.1992); (2) the named representative must have a "sufficient interest in the outcome to ensure vigorous advocacy," *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D.Ill.1986); and, (3) counsel for the named plaintiff must be competent, experienced, qualified, and generally able to conduct the proposed litigation vigorously. *Id.* As should be evident from the foregoing, we have carefully considered defendants' opposition to class certification and cannot conclude that Demitropoulos has interests antagonistic or conflicting with those of the class. The Court also concludes that he has a sufficient interest in the outcome to ensure vigorous advocacy. Finally, we note that defendants do not purport to challenge the adequacy of Demitopoulos' counsel.[21] This Court is satisfied that Demitropoulos' attorneys have demonstrated that they possess the necessary qualifications to represent adequately a class of consumers pursuing CLA disclosure claims. Accordingly, we find that Demitropoulos has met his burden of satisfying Rule 23(a)(4)'s adequacy of representation requirement.

Finally, we consider whether Demitropoulos satisfies the requirements of Rule 23(b)(3). Defendants do not explicitly challenge class certification under Rule 23(b)(3) and we find such certification to be appropriate. Class certification pursuant to Rule 23(b)(3) requires a determination that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3).

Considerable overlap exists between Rule 23(a)(2)'s commonality prerequisite and 23(b)(3). Rule 23(a)(2) requires that common questions exist; Rule 23(b)(3) requires that they predominate. The Court is satisfied that the core issue presented by the class is whether various of the CLA's disclosure requirements are violated by the Bank One Lease. This issue predominates over all others. *See Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111 (D.Kan.1995) (holding that the predominance requirement is satisfied even in the presence of individual questions where the critical issues are the defendant's standardized conduct towards class members and interpretation of the defendant's standard contract language).

Rule 23(b)(3) provides a non-exhaustive list of factors for courts to consider in determining the superiority of class actions to individual litigation. These factors include the interest of individual members in individually controlling the litigation, the desirability of concentrating the litigation in the particular forum, and the manageability of the class action. Fed.R.Civ.P. 26(b)(3).

The Court finds that a class action is superior to other methods of litigating this matter for several reasons. First, this case poses no unusual manageability concerns. Second, most of the proposed class members are individual consumers who are probably unaware of their rights under the CLA. A class action would help to ensure that their rights are protected. Third, since we are dealing with statutory damages under the CLA, the amount of recovery available to any individual is relatively small. Class members, even if aware of their rights, likely

---

**21.** However, the Court pauses here to note that the manner in which this litigation has been handled has been less than satisfactory, as noted several times herein and by the Court in the public proceedings in this case. While this behavior does not affect our holdings herein, this type of behavior will be appropriately weighed by the Court in assessing the qualifications of counsel in the future.

would lack the initiative to bring suit individually. *See Haynes v. Logan Furniture Mart, Inc.,* 503 F.2d 1161, 1164–65 (7th Cir. 1974) (finding "the improbability that large numbers of class members would possess the initiative to litigate individually" pertinent to superiority finding). Fourth, efficiency and consistency concerns favor trying the legality of a document challenged by all class members in one litigation, rather than forcing each proposed class member to litigate his or her claim individually. *Scholes v. Stone,* 143 F.R.D. 181 (N.D.Ill.1992). In view of these considerations, the Court finds Rule 23(b)(3)'s superiority element to be satisfied.

■ Having determined that all of the prerequisites of Rule 23(a) are satisfied and that the action also meets the conditions of Rule 23(b)(3), the Court grants plaintiff's motion for class certification for count I. This action may be maintained as a class action with the class and subclass defined, as in plaintiff's motion for class certification, as follows:

The class is defined as all persons who satisfy the following criteria:

a. They signed a lease prepared using the same printed form as Exhibit A to the complaint (*i.e.,* the Bank One Lease form 3/91).

b. The total payments on the lease were less than $25,000.

c. The lease was for more than four months.

d. The lease is marked as a consumer purpose lease.

e. The lease is still outstanding or was terminated within one year prior to the filing of this action.

The subclass shall consist of all members whose leases were originated by Team Chevy.

### CONCLUSION

Defendants' motion to dismiss is granted in part and denied in part as set forth herein. With respect to those claims dismissed with leave to file an amended complaint, such amended complaint shall be filed no later than March 8, 1996. Plaintiff's motion for class certification is granted. A status hearing will be held on March 15, 1996, to set a precise schedule to resolve this litigation.